# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:10-CR-143** |
| | : | |
| v. | : | **(Judge Conner)** |
| | : | |
| **RONALD CLARENCE BARKLEY** | : | |

## **MEMORANDUM**

On September 2, 2010, defendant Ronald Clarence Barkley ("Barkley") pled guilty pursuant to a written plea agreement with the government (see Doc. 22) to one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). According to the terms of the plea agreement, Barkley agreed to allow the court to determine the appropriate restitution for identifiable victims in the images of child pornography found in his possession. (Id. ¶ 14). Two identified victims submitted restitution requests. One identified victim requests $3,367,854 in restitution and another victim requests $150,000 in restitution for a total of $3,517,854. (Pre-sentence Report ("PSR") ¶ 70). The government seeks to hold Barkley liable for the full restitution amount jointly and severally with similarly situated defendants. (PSR ¶ 18). Barkley objects to the amount of restitution asserting that the way, manner, or process by which the amount of restitution was calculated is unclear. For the reasons that follow, the court finds that restitution is warranted but declines to establish a restitution amount without further proceedings.

**I.     Background**

Pursuant to a search warrant executed at Barkley's residence on June 24, 2009, government agents discovered 460 images of child pornography on seized computer media. The search also revealed eleven videos/movies known to contain child pornography. Some of the images portrayed sadistic and masochistic conduct. Through the Child Victim Identification Program from the National Center for Missing and Exploited Children officials identified seventeen series of child pornography images on Barkley's computer that portray known victims. Barkley was indicted on May 5, 2010 with one count of possession of child pornography in violation of 18 U.S.C. § 2252(a)(5)(B), (Doc. 1), and pled guilty on September 2, 2010. (Doc. 25). In preparation of the presentence report, the United States Probation Office received victim impact statements representing six of the seventeen identified series of child pornography. Amy, a pseudonym of a victim of the "Misty" series, requested restitution totaling $3,367,854. L.S. a victim of the "Jan_Feb" series requests restitution in the amount of $150,000.

When Amy, the victim of the "Misty" series, was eight and nine years old, she was raped and sexually exploited by her uncle. (Correspondence from Counsel for Amy, Dated June 22, 2010 (hereinafter "Letter"), at 2). Amy has suffered and continues to suffer significant harm as a result of this abuse. James R. Marsh, Esquire, counsel on behalf of Amy, submitted Amy's request for restitution which includes a victim impact statement from Amy, a psychological evaluation report from Dr. Joyanna Silberg, and a loss calculation analysis by Stan Smith of Smith

2

Economics Group, Ltd.  Attorney Marsh asserts that "[t]he primary reason Amy was raped and forced to endure oral copulation, anal penetration and masturbation with an adult man was to provide child pornography for an end user / consumer whose demand for child sex abuse images directly led to her physical and psychological abuse and exploitation." (Id.)  Each distribution and viewing of the images of her abuse re-victimizes Amy.  Treatment is particularly problematic as the abuse is never really over. (Letter, at 5 (stating that "[t]he continuous distribution and possession of a victim's child sex abuse images imposes a permanent and recurring reminder of their sexual abuse and this knowledge further exacerbates the psychological harm caused by the actual act of abuse")). Dr. Silberg reports that Amy will likely suffer the effects of her abuse over her entire lifetime, will require weekly therapy and will likely require stints of more intensive inpatient or rehabilitation services.  (Id. at 10).

Amy explains that each time her images are viewed "[i]t's like I am being abused over and over and over again," and because of the proliferation of the internet "the crime has never really stopped and will never really stop." (Victim Impact Statement - Amy, at 1).  Amy describes the effects the abuse and continued viewing has had on her, including: dissociation, fear, humiliation, shame, embarrassment, nightmares, trust issues, and feelings of unworthiness.  (Id. at 2). Dr. Silberg corroborates the continued trauma and confirms the difficulty of treating in light of the frequency of her re-victimization.  (Silberg Report, at 8-10).

3

Pursuant to 18 U.S.C. § 2259, Attorney Marsh requests restitution for the entire amount of Amy's losses stemming from the initial abuse by her uncle and the constant re-traumatization by each defendant like Barkley who possesses her images.[1] Attorney Marsh asserts that the circulation of the images of Amy's abuse is an ongoing violation of her dignity and privacy, causes her shame, humiliation and emotional distress all resulting in substantial injury that flows directly and proximately from conduct such as Barkley's. (Letter, at 15).

**II.    Discussion**

In sentencing a defendant, the court is required to consider the kinds of sentences available and "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a). Restitution awards in child pornography possession cases are a developing area of law of restitution.

Pursuant to 18 U.S.C. § 2259, the controlling restitution statute in this case, restitution is mandatory: "the court *shall* order restitution for any offense under this chapter." 18 U.S.C. § 2259(a) (emphasis added); id. § 2259(b)(4) ("The issuance of a restitution order under this section is mandatory."). Accordingly, a defendant must pay the victim "the full amount of the victim's losses as determined by the court." Id. § 2259(b)(1). Those losses include:

---

[1] The other identified victim, L.S., who requests $150,000 in restitution has not identified with any specificity how this value was calculated. However, the conclusions this court reaches with respect to Amy's request for restitution are equally applicable to L.S.'s request for restitution. The court declines to determine restitution amounts in either case without further proceedings.

4

>     any costs incurred by the victim for–
>     (A) medical services relating to physical, psychiatric, or psychological care;
>     (B) physical and occupational therapy or rehabilitation;
>     © necessary transportation, temporary housing, and child care expenses;
>     (D) lost income;
>     (E) attorneys' fees, as well as other costs incurred; and
>     (F) any other losses suffered by the victim as a proximate result of the offense.

Id. § 2259(b)(3). The burden rests with the government to establish by a preponderance of the evidence "the amount of the loss sustained by a victim as a result of the offense." 18 U.S.C. § 3664(e); United States v. Graham, 72 F.3d 352, 356 (3d Cir. 1995). For purposes of §2259, a victim is "the individual harmed as a result of a commission of a crime under this chapter," id. § 2259©, which includes Barkley's offense. The court must first determine if Amy is a victim of Barkley's offense. Then the court must determine whether there is a causation requirement connecting Barkley's offense to Amy's harm, and if so whether the requirement has been satisfied.

### A. Victim

In New York v. Ferber, 458 U.S. 747 (1982), the Supreme Court recognized the significant harm to the victims of child pornography. Id. at 758; see also id. at 759 (stating that "the materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation"); Ashcroft v. Free Speech Coal., 535 U.S. 234, 249 (2002) (reiterating that "as a permanent record of a child's abuse, the continued circulation itself would harm

5

the child who had participated. Like a defamatory statement, each new publication of the speech would cause new injury to the child's reputation and emotional well-being"). The harm is not simply in the abuse itself, but also in the possession and continued circulation of images of that abuse. See Osborne v. Ohio, 495 U.S. 103 (1990) (holding that the First Amendment is not violated by a prohibition on the possession and viewing of child pornography).

Courts have found that end users or recipients of child pornography—including possessors such as Barkley—cause the child victim to suffer in at least three ways: (1) the dissemination of images perpetuates the abuse; (2) the continued existence of the images represents an invasion of privacy; and (3) the consumers who view the images instigate the production of child pornography by providing an economic motive. See United States v. Norris, 159 F.3d 926, 929-30 (5th Cir. 1998); United States v. Tillmon, 195 F.3d 640, 644 (11th Cir. 1999) (continuing invasion of privacy and the creation of a market for child pornography); United States v. Goff, 501 F.3d 250, 259-60 (3d Cir. 2007).(consumer perpetuates and "'creates a market' for the abuse by providing an economic motive for creating and distributing the materials"); see also United States v. Church, 701 F. Supp. 2d 814, 820-22 (W.D. Va. 2010).

In the Third Circuit's view "[c]hildren are exploited, molested, and raped for the prurient pleasure of [defendant] and others who support suppliers of child pornography. . . . There is nothing 'casual' or theoretical about the scars they will bear from being abused for [defendant's] advantage." Goff, 501 F.3d at 259.

6

> Consumers such as [defendant] who "merely" or "passively" receive or possess child pornography directly contribute to this continuing victimization. Having paid others to "act out" for him, the victims are no less damaged for his having remained safely at home, and his voyeurism has actively contributed to a tide of depravity that Congress, expressing the will of our nation, had condemned in the strongest terms.

Id.

The court concludes without hesitation that Amy is a victim of Barkley's offense. See United States v. Hardy, 707 F. Supp. 2d 597, 604 (W.D. Pa. 2010) (stating that whether Amy is a victim under § 2259 is "not an open question"); Church, 701 F. Supp. 2d at 820 (finding that "[w]ithout hesitation, . . . Amy is a 'victim' of [the offense of possession of child pornography] under § 2259"); United States v. Brunner, No. 5:08-cr-16, 2010 WL 148433, at *1 (W.D.N.C. Jan. 12, 2010) ("There can be no doubt that Amy . . . fits the statute's definition of a 'victim.'").

### B. Causation Requirement

The more difficult question for purposes of a restitution order pursuant to § 2259 is whether the government must show a causal connection between Amy's harm and the defendant's offense. Counsel for Amy asserts that § 2259 does not contain a proximate causation requirement for Amy's harm. Unlike the Victim and Witness Protection Act and the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, which specifically require that a victim be "directly and proximately harmed as a result of the commission of an offense, § 2259 requires that a victim be "harmed as a result of a commission of a crime." 18 U.S.C. § 2259©. Thus, according to counsel, *any* harm to Amy resulting from her exploitation as a child is subject to a

7

restitution award from Barkley. The argument is unpersuasive and contrary to Third Circuit precedent.

Each circuit that has addressed restitution under § 2259, including the Third Circuit, has concluded that § 2259 requires a causal connection between the victim's harm and the defendant's offense. See In re Amy, 591 F.3d 792, 794 (5th Cir. 2009) (noting proximate cause requirement and collecting cases); United States v. Laney, 189 F.3d 954, 965 (9th Cir. 1999) (requiring causal connection); United States v. Crandon, 173 F.3d 122, 125 (3d Cir. 1999) (requiring proximate cause); see also Hardy, 707 F. Supp. 2d at 605-10 (requiring proximate cause); United States v. Covert, Crim. No. 09-332, 2011 WL 134060, at *5 (W.D. Pa. Jan. 14, 2011) (requiring proximate cause). But see United States v. Staples, No. 09-14017-CR, 2009 WL 2827204, at *3-4 (S.D. Fla. Sept. 2, 2009) (awarding restitution without discussion of causal connection between victim's harm and defendant's conduct).

In United States v. Crandon, the Third Circuit stated without discussion that § 2259 requires the court to award a victim the full amount of his or her losses that are "a proximate result of the offense." 173 F.3d at 125 (affirming restitution award to victim of defendant who pled guilty to receipt of child pornography but who also engaged in sexual relations with the victim). Pursuant to Crandon and its progeny, the defendant's conduct must be a substantial factor in the victim's ultimate loss. Id. at 126. Hence, in order for this court to award restitution for Amy, the government must show Amy's losses were proximately caused by Barkley. See also Hardy, 707 F. Supp. 2d at 605-10 (discussing in detail the requirement of proximate

8

cause for a restitution order pursuant to § 2259 in the context of a child pornography possession case).

District courts around the nation are not in agreement as to whether Amy's losses are proximately caused by a defendant's possession of her images. See, e.g., Covert, 2011 WL 134060, at * 9 (no evidence that defendant's possession of Amy's images caused her a specific loss beyond the continued generalized harm from the knowledge that others possess and view the images); United States v. Van Brackle, Crim. A. No. 2:08-CR-042-WCO, 2009 WL 4928050 (N.D. Ga. Dec. 17, 2009) (restitution award amount would be pure speculation); United States v. Paroline, 672 F. Supp. 2d 781, 791-93 (E.D. Tex. 2009). When restitution has been awarded, the amount has varied considerably from nominal damages to the full amount of the victim's losses. See Church, 701 F. Supp. 2d at 832-35 (awarding nominal damages of $100 after concluding that restitution was mandatory because Amy was harmed by defendant's conduct of possession of child pornography, but finding no evidence to reasonably calculate the measure of harm done to Amy by defendant's specific conduct); Brunner, 2010 WL 148433 (awarding $6,000 in restitution to victims); Staples, 2009 WL 2827204 (holding defendant joint and severally liable for award of restitution to Amy in the amount of $3,680,153); United States v. Monk, No. 1:08-CR-0365, 2009 WL 2567831 (E.D. Cal. Aug. 18, 2009) (awarding $3,000 restitution to two victims); United States v. Zane, No. 1:08-CR-0369, 2009 WL 2567832 (E.D. Cal. Aug. 18, 2009) ($3,000 restitution to each victim).

Pursuant to Crandon, the court concludes that the evidence before the court is sufficient to establish that Barkley's conduct was a substantial factor in causing Amy's harm. Barkley's possession of the images clearly exacerbates the harm to Amy, and facilitates the market for the continued production, distribution, and possession of such images. See United States v. Brown, 1:09-CR-0394 (Doc. 83, at 9) (M.D. Pa. Dec. 13, 2010); see also United States v. Aumais, No. 08-CR-711, 2010 WL 3033821, at *6 (N.D.N.Y. Jan. 13, 2010) (defendant's possession of Amy's images was a substantial cause of Amy's harm). Each viewing re-victimizes Amy and others like her. Although, the images would be circulating despite Barkley's possession, Barkley's possession of her images aided that circulation and contributed to her harm. See Hardy, 707 F. Supp. 2d at 613-14. Thus, Barkley's offense was a substantial factor in some part of Amy's harm. See Goff 501 F.3d at 159. ("Consumers such as [defendant] who 'merely' or passively' receive or possess child pornography directly contribute to this continuing victimization.").

Undoubtedly, some of Amy's harm arises from the widespread availability of her images and the possession of those images by individuals such as Barkley. See United States v. Berk, 666 F. Supp. 2d 182, 190-191 (D. Me. 2009). Counsel for Amy has submitted evidence regarding Amy's aggregate loses and harm; however, this evidence does not specify that which was caused by defendant Barkley's conduct in particular. Counsel for Amy asserts that the court is required to order restitution for the full amount of her losses, (Letter, at 16-18), and that joint and several liability is appropriate, it being "impossible to apportion the harm to Amy amongst the

numerous past, present and future defendants." (Letter, at 22). The court recognizes that mathematical precision is not required in the damages calculation for a restitution order and that the court need only be able to estimate the victim's losses with some reasonable certainty. See United States v. Doe, 488 F.3d 1154, 1159-60 (9th Cir. 2007); United States v. Monzel, --- F. Supp. 2d ---, 2010 WL 4261429, at *10 (D.D.C. Oct. 22, 2010); see also Church, 701 F. Supp. 2d at 830-31 (citing cases using a reasonableness principle for determination of appropriate restitution). Nonetheless, further proceedings are necessary to determine whether Barkley shall be liable for the entire amount of Amy's damages, or only those damages attributable to his offense conduct.

### III. Conclusion

For the foregoing reasons, the court concludes that Amy and L.S. are victims whose injuries have been proximately caused to some extent by Barkley's conduct. Pursuant to 18 U.S.C. § 2259 restitution is mandatory. However, the court declines to determine a restitution amount at this juncture. A final restitution order will issue separately, subsequent to further proceedings on the appropriate amount of restitution.

An appropriate order follows.

    S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated:      March 7, 2011

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:10-CR-143** |
| | : | |
| v. | : | (Judge Conner) |
| | : | |
| **RONALD CLARENCE BARKLEY** | : | |

## **ORDER**

AND NOW, this 7th day of March, 2011, upon consideration of the requests for restitution submitted by two victims of the defendant's offense, and for the reasons set forth in the accompanying memorandum, the court concludes that a restitution award is warranted. An order setting a hearing on the issue of the appropriate amount of restitution shall issue by future order of the court.

      S/ Christopher C. Conner
      CHRISTOPHER C. CONNER
      United States District Judge